# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------X

STEFANIA DAIDONE MANIACI, individually and
on behalf all others similarly situated,

               Plaintiffs,

           -against-

KISS MY FACE CORPORATION, KISS MY
FACE, LLC, and BYCMAC CORP.,

              Defendants,

-----------------------------------------------------------------X

Index No.:

Plaintiff designates Nassau
County as the Place of Trial

The basis of venue is
Plaintiff's Residence

**SUMMONS**

Plaintiff Resides in
Nassau County, NY

TO THE ABOVE-NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the complaint on this action and serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on Plaintiffs' attorney(s) within 20 days after the service (or within 30 days after the
service is complete if this summons is not personally delivered to you within the State of New York);
and in the case of your failure to appear or answer, judgment will be taken against you by default for
the relief demanded herein.

     Plaintiffs designate Nassau County as the place of trial. The basis of venue is Plaintiff's
residence.

Dated: Bronx, New York
      May 2, 2017

                                 Yours, etc.,
                                 GABRIELLI LEVITT LLP

By:

                                 Michael J. Gabrielli, Esq.
                                 Attorney(s) for Plaintiffs
                                 2426 Eastchester Road, Suite 103
                                 Bronx, New York 10469
                                 (718) 708-5322

Defendants' address:
144 Main Street
Gardiner, NY 12525

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------X
STEFANIA DAIDONE MANIACI, individually and
on behalf all others similarly situated,

        Plaintiffs,

      -against-

KISS MY FACE CORPORATION, KISS MY
FACE, LLC, and BYCMAC CORP.,

        Defendants,

-----------------------------------------------------------------X

Index No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Stefania Daidone Maniaci ("Plaintiff" or "Maniaci"), a resident of New York, individually and on behalf of other similarly situated individuals, by and through her counsel, upon personal knowledge as to her own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, alleges as follows:

## INTRODUCTION

1.    Defendants, Kiss My Face Corporation, Kiss My Face, LLC, and Bycmac Corp. (collectively, "Kiss My Face" or "Defendants"), market themselves as "pioneers" in the area of "natural cosmetics," and "respected leaders in natural body care with over 100 naturally effective bath and body products sold in over 19 countries worldwide." Among other purportedly "natural" products, Defendants manufacture, distribute, advertise and sell Kiss My Face brand skin care products, including Kiss My Face® 2-in-1 Deep Moisturizing Body Lotion ("KMF Body Lotion") and Kiss My Face® Bath and Body Wash ("KMF Body Wash," and collectively, "the Products").

2.    Consistent with Defendants' self-promotion as a leader in natural cosmetics, the front packaging of every KMF Body Lotion and KMF Body Wash product states in prominent, bold lettering "**nourish naturally**." To reinforce the message that the Products are natural products, the

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM          INDEX NO. 603855/2017

NYSCEF DOC. NO. 2    Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 4 of 33 PageID #: 10    RECEIVED NYSCEF: 05/03/2017

front packaging displays pictures of leaves and flowers and highlights the Product's "botanical blends," while the back labeling states that the Products are "naturally effective" and "natural plant based." *See*, **Exhibit A**, annexed hereto.

3.    Contrary to the labeling, however, these purportedly "natural" Products contain two synthetic ingredients, phenoxyethanol and/or ethylhexylglycerin. In this respect, it is important to note that in April 2016, the Federal Trade Commission ("FTC") filed complaints against three cosmetics manufacturers for representing that their products were natural when they contained one or both of those two ingredients. *See*, **Exhibit B**, annexed hereto. All three companies agreed to cease marketing the products in question as being "natural."[1]

4.    Plaintiff and members of the class described below relied on Defendants' misrepresentations that the Products are "natural" when purchasing the Products. Plaintiff and members of the class described below paid a premium for Defendants' Products over comparable products that did not purport to be "natural" products. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Certified Natural" and/or "Natural", Plaintiff and Class Members suffered an injury in the amount of the premium paid. Contrary to representations on the Products' labeling, instead of receiving "natural" products, consumers receive products with unnatural and/or synthetic ingredients.

5.    Defendants' representation that the Products are "natural" is unfair, unlawful, and fraudulent conduct, and is likely to deceive members of the public. As such, Defendants' practices violate New York's General Business Law §§ 349 and 350.

---

[1]    https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited April 28, 2017).

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM INDEX NO. 603855/2017

NYSCEF DOC. NO. 2 Case 2:17-cv-03670-SJF-ARL Document 1-1 Filed 06/16/17 Page 5 of 33 PageID #: 11 RECEIVED NYSCEF: 05/03/2017

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to New York CPLR § 301 because Defendants transacted business and committed the alleged acts in New York. Defendants are headquartered in New York and have systematically and continually conducted business in Nassau County, New York and throughout the State of New York.

7. Defendants are doing, and at all relevant times, have done business in Nassau County, New York, and venue is proper under New York CPLR § 7502. The circumstances giving rise to this action occurred in whole or in part in the County in which this Court sits.

## PARTIES

8. Plaintiff is a citizen of New York, residing in Nassau County. In the last approximately three years, Ms. Maniaci made several purchases of KMF Body Lotion from various stores in and near Manhasset, New York. Prior to purchasing KMF Body Lotion, Ms. Maniaci saw and read the front of the product packaging, and relied on the representation and warranty that the product would "nourish naturally" and was "naturally effective." Ms. Maniaci understood that representation to mean that KMF Body Lotion did not contain synthetic chemicals. Ms. Maniaci purchased KMF Body Lotion at a substantial price premium, and would not have bought the product had she known that the labeling she relied on was false, misleading, deceptive and unfair.

9. Ms. Maniaci would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their "natural" labeling and marketing.

10. Defendant, Kiss My Face Corporation, is a New York corporation that has its principal place of business at 144 Main St., Gardiner, New York.

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM          INDEX NO. 603855/2017

NYSCEF DOC. NO. 2 Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 6 of 33 PageID #: 12 RECEIVED NYSCEF: 05/03/2017

11.     Defendant, Kiss My Face, LLC, is a New York limited liability corporation that has its principal place of business at 144 Main St., Gardiner, New York.

12.     Defendant, Bycmac Corp., is a New York Corporation that has its principal place of business at 144 Main St., Gardiner, New York.

13.     Defendants produce, market and distribute various consumer skin care and hygiene products in retail stores across the United States. Among others, those products include KMF Body Lotion and KMF Body Wash (the "Products"). Defendants knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products contain phenoxyethanol and/or ethylhexylglycerin, which are inconsistent with the product labeling.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     Consumers have become increasingly concerned about the effects of synthetics and chemical ingredients in cosmetic products. Companies such as the Defendants have capitalized on consumers' desires for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a premium for products labeled "natural" over ordinary products that contain synthetic ingredients.

15.     The FTC has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[2]

---

[2] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

16.     Whether Defendants' labeling of the Products as "natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

17.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. *See*, **Exhibit C**, annexed hereto.

18.     Congress has defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources.[3]

19.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients. By way of example, according to a

---

[3] 7 U.S.C. § 6502 (2.1).

consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[4]

20. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

21. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

22. Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent front-of-the-Products claims, representations, and warranties that the Products are "natural."

23. Kiss My Face is a brand of skin care and hygiene products manufactured and marketed by Defendants and sold in drug and grocery stores nationwide. On their website, Defendants tout that "[f]or 35 years, Kiss My Face has been striving to give you **naturally** effective skin care and body products, using **natural** ingredients while maintaining a healthy respect for our planet. And to this day, we are obsessively passionate about staying true to our values" (emphasis added).[5]

---

[4] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf

[5] http://kissmyface.com/ (last visited April 28, 2017).

24.     KMF Body Lotion comes in six varieties, all of which contain phenoxyethanol and/or ethylhexylglycerin: Olive & Aloe®, Vitamin A & E™, Honey & Calendula™, Tropical Coconut™, Peaches & Créme®, and Lavender Shea™.

25.     KMF Body Wash comes in eight varieties, all of which contain phenoxyethanol and/or ethylhexylglycerin: Active Athletic®, Anti-Stress™, Cold & Flu®, Peaceful Patchouli®, Early to Bed®, Early to Rise®, Silky Soft™, and Tropical Indulgence.

26.     The label of every KMF Body Lotion and KMF Body Wash package states prominently in bold lettering the words "nourish naturally."

27.     Some of the Products are labeled with the alternative phrase, "naturally nourishing," while others are labeled "naturally effective" and "natural plant based."

28.     The Products have been labeled "nourish naturally," "naturally nourishing," "naturally effective" and/or "natural plant based" at all times during the last three years, at least.

29.     Based on the language that appears on the front of each product, Plaintiff reasonably believed that KMF Body Lotion contained only natural ingredients.

30.     The phrases "nourish naturally," "naturally nourishing," "naturally effective" and/or "natural plant based" are representations to a reasonable consumer that KMF Body Lotion and KMF Body Wash contain only natural ingredients. The phrases are misleading to a reasonable consumer because KMF Body Lotion and KMF Body Wash actually contain unnatural and synthetic ingredients, namely phenoxyethanol and/or ethylhexylglycerin.

31.     Defendants did not disclose that the above listed ingredients are synthetic ingredients.

32.    Defendants knew that consumers will pay more for a product labeled "natural," and intended to deceive Plaintiff and putative class members by labeling KMF Body Lotion and KMF Body Wash as purportedly natural products.

33.    Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

34.    Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "natural" label.

35.    Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

37.    This action is brought and may properly be maintained as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules.

38.    The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

> All persons who purchased Kiss My Face Body Lotion and Kiss My Face Body Wash Products within the State of New York from the beginning of any applicable limitations period through the date of class certification ("the Class").

39.    For the foregoing reasons, this action fulfills the standards and requirements as outlined by Article 9 of the CPLR.

40.    Excluded from the Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

41.    Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded or otherwise modified.

42.    All members of the Class were and are similarly affected by the deceptive advertising of the Defendants, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

43.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM          INDEX NO. 603855/2017

NYSCEF DOC. NO. 2 Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 12 of 33 PageID #: 18  RECEIVED NYSCEF: 05/03/2017

45.    Commonality: The questions of law and fact common to the Class Members which

predominate over any questions which may affect individual Class Members include, but are not

limited to:

        a.    Whether Defendants are responsible for the conduct alleged herein which
was uniformly directed at all consumers who purchased the Products;

        b.    Whether the marketing, advertising, packaging, labeling, and other
promotional materials for the Product are deceptive and/or misleading;

        c.    Whether Defendants' misconduct set forth in this Complaint demonstrates
that Defendants have engaged in unfair, fraudulent, or unlawful business
practices with respect to the advertising, marketing, and sale of its Products;

        d.    Whether Defendants made false and/or misleading statements to the Class
and the public concerning the contents of their Products;

        e.    Whether Defendants' false and misleading statements concerning their
Products were likely to deceive the public;

        f.    Whether Plaintiff and the Class are entitled to money damages under the
same causes of action as the other Class Members.

        g.    Whether Defendants violated New York General Business Law § 349; and

        h.    Whether Defendants violated New York General Business Law § 350.

46.    Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the

claims of each Class Member in that every member of the Class was susceptible to the same

deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief

under the same causes of action as the other Class Members.

47.    Adequacy: Plaintiff is an adequate Class representative because her interests do not

conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims

are common to all members of the Class and she has a strong interest in vindicating her rights; she

has retained counsel competent and experienced in complex class action litigation and they intend to

vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The

Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

48.      A Class Action Provides a Substantial Benefit to the Courts and Litigants: Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.

49.      Common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

50.      Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

51.      Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM          INDEX NO. 603855/2017

NYSCEF DOC. NO. 2    Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 14 of 33 PageID #: 20  RECEIVED NYSCEF: 05/03/2017

persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

52.    Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

53.    WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for an order certifying the Class and appointing Plaintiff and her counsel of record to represent the Class.

## FIRST CAUSE OF ACTION
### (Violation of New York General Business Law § 349)

54.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

55.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

56.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

57.    There is no adequate remedy at law.

58.    Defendants misleadingly, inaccurately, and deceptively present their Products to consumers.

59.    Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as being "naturally effective," "natural plant based" and/or "naturally nourishing" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class

Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

60.     Plaintiff and the Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations— not "natural." Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

61.     Defendants' advertising and Products' packaging and labeling induced the Plaintiff and the Class Members to buy Defendants' Products and to pay a premium price for them.

62.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

63.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**(Violation of New York General Business Law § 350)**

64.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

65.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

66.     New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

67.     GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

68.     Plaintiff and the members of the Class are consumers who purchased the Products in New York.

69.     As sellers of goods to the consuming public, Defendants are engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

70.     Defendants' representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendants' advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

71.     Defendants' false advertising was knowing and intentional.

72.     Defendants' actions led to direct, foreseeable and proximate injury to Plaintiff and the Class.

73.     As a consequence of Defendants' deceptive marketing scheme, Plaintiff and the other members of the Class suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the Products on different terms, or would otherwise purchase a competing product, and as a result of Defendants' conduct, they received a product of less value than what they paid for.

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM          INDEX NO. 603855/2017

NYSCEF DOC. NO. 2    Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 17 of 33 PageID #: 23    RECEIVED NYSCEF: 05/03/2017

74.     By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for actual damages or five hundred dollars ($500) for each sale of the Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

75.     Plaintiff and the other members of the Class further seek to enjoin the false advertising described above.

76.     Absent injunctive relief, Defendants will continue to deceptively market the Products.

THEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class providing such relief as follows:

A.     For certification of the Class;

B.     An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein;

C.     Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment and post-judgment interest at the maximum rate allowable by law;

D.     Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 349 and common law, enjoining Defendants' unlawful and deceptive acts;

E.     Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM    INDEX NO. 603855/2017

NYSCEF DOC. NO. 1   Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 18 of 33 PageID #: 24   RECEIVED NYSCEF: 05/03/2017

F.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

G.      Such further relief as this Court may deem just and proper.

DATED: May 2, 2017

**GABRIELLI LEVITT LLP**

Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Attorneys for Plaintiff and Proposed Class*

Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 19 of 33 PageID #: 25

# EXHIBIT A





🌿 **naturally effective** ❤ **cruelty-free**

Our Aromatherapeutic® formula has Naturally
Nourishing Antioxidants™ like Lavender
botanicals and Shea Butter. **One Kiss Is All
It Takes™** for a little tranquility.

💋 **We Kiss with Purpose!** For over 30 years
we've been obsessively passionate about
giving you naturally effective products with
a healthy respect for our fragile planet.

**Bob & Steve**
Founders & Chief Kissers

**OUR BELIEFS**  visit us
kissmyface.com

**OUR RECIPE**
**NO** parabens
phthalates

**CRUELTY-FREE** ❤
Tube
♻ 2 HDPE
Please
recycle

**ETHICAL SOURCING**
Tube made in
North America

For a lighter experience try Kiss My Face®
**AIR KISS™** Light Moisturizing Lotions.

INGREDIENTS: Water, Caprylic/Capric Triglyceride, Glycerin,
Glyceryl Stearate SE, Cetyl Alcohol, Stearic Acid, Stearyl
Alcohol, Helianthus Annuus (Sunflower) Seed Oil,
Butyrospermum Parkii (Shea) Butter, Cocos
Nucifera (Coconut) Oil, Oryza Sativa (Rice)
Bran Oil, Hydrogenated Ethylhexyl Olivate,
Olea Europaea (Olive) Fruit Oil, Vitis Vinifera
(Grape) Seed Oil, Lavandula Angustifolia
(Lavender) Flower Oil, Lavandula Angustifolia
(Lavender) Flower Extract, Aloe Barbadensis
Leaf Juice, Panthenol, Calendula Officinalis
(Marigold) Flower Extract, Chamomilla Recutita
(Matricaria) Flower Extract, Citrus Aurantium
Dulcis (Orange) Flower Extract, Squalane,
Hydrogenated Olive Oil Unsaponifiables,
Tocopheryl Acetate (Vitamin E), Xanthan
Gum, Polysorbate 60, Sodium Phytate,
Ethylhexylglycerin, Phenoxyethanol,
Potassium Sorbate, Sodium Benzoate

Dist: Kiss My Face LLC, Gardiner, NY 12525 USA
Made in USA







NYSCEF DOC. NO. 2    Case 2:17-cv-03670-SJF-ARL    Document 1-1    Filed 06/16/17    Page 24 of 33 PageID #: 30    RECEIVED NYSCEF: 05/03/2017

y Big?
Less Waste

eter en gros?
moins de déchets

with Purpose!
e've been obsessively
t giving you naturally
with a healthy respect for
agile planet.

s pour une bonne cause!
30 ans, nous avons été
ent passionnés de vous
naturellement efficaces
ant notre planète fragile.

Bob & Steve
Founders & Chief Kissers
Fondateurs et Rois du baiser

CRUELTY-FREE

RECYCLED 25% PLASTIC

PETE    Please recycle
S.V.P. recycler

INGREDIENTS/INGRÉDIENTS: Aqua,
Sodium Coco Sulfate, Coco Betaine, Decyl
Glucoside, Coco-Glucoside, Glyceryl
Oleate, Sodium Chloride, Olea Europaea
(Olive) Fruit Oil, Aloe Barbadensis Leaf
Juice, Allantoin, Lecithin, Tocopheryl
Acetate (Vitamin E), Mentha Piperita
(Peppermint) Leaf Extract, Mentha Viridis
(Spearmint) Leaf Extract, Citrus Medica
Limonum (Lemon) Fruit Extract,
Cymbopogon Schoenanthus (Lemongrass)
Leaf Extract, Gaultheria Procumbens
(Wintergreen) Leaf Extract, Laurus Nobilis
(Bay) Leaf Extract, Eucalyptus Globulus
(Eucalyptus) Leaf Extract, Ocimum
Basillicum (Basil) Leaf Extract, Juniperus
Communis (Juniper) Berry Extract, Citrus
Grandis (Grapefruit) Peel Extract, Pheno-
xyethanol, Potassium Sorbate, Citric Acid

Distr: Kiss My Face LLC
Gardiner, NY  12525 USA
Made in USA/Fabriqué aux É-U.

share the love
partagez l'amour

0  28367 84373  3

1432ER1F-115

Case 2:17-cv-03070-SJF-ARL   Document 1-1   Filed 06/16/17   Page 25 of 33 PageID #: 31



Case 17-cv-03670-SJF-ARL Document 1-1 Filed 06/16/17 Page 26 of 33 PageID #: 32



# EXHIBIT B

152 3265

## UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

**COMMISSIONERS:**       **Edith Ramirez, Chairwoman**
                         **Maureen K. Ohlhausen**
                         **Terrell McSweeny**

In the Matter of

**TRANS-INDIA PRODUCTS, INC., a corporation,
d/b/a/ SHIKAI.**                                     DOCKET NO.

## COMPLAINT

The Federal Trade Commission, having reason to believe that Trans-India Products, Inc., has violated the provisions of the Federal Trade Commission Act, and it appearing to the Commission that this proceeding is in the public interest, alleges:

1.      Respondent Trans-India Products, Inc., doing business as ShiKai, is a California corporation with its principal office or place of business at 3330-A Coffey Lane, Santa Rosa, California 95404, and a mailing address of Box 2866, Santa Rosa, California 95405.

2.      Respondent has advertised, labeled, offered for sale, sold, and distributed products to consumers, including "All Natural Hand and Body Lotion" and "All Natural Moisturizing Shower Gel."

3.      The acts and practices of Respondent alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the Federal Trade Commission Act.

4.      Respondent advertises the above products on the Internet. They retail for $6.39 to $6.59.

5.      Respondent has disseminated or has caused to be disseminated advertisements for its Hand and Body Lotion and Moisturizing Shower Gel, including but not necessarily limited to the attached Exhibits A-C.

A.      The packaging for the Hand and Body Lotion states that it is an "All Natural Hand and Body Lotion."

Exhibit A, Internet webpage www.walgreens.com/store/c/shikai-all-natural-hand-and-body-lotion-starfruit (August 2015).

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM
INDEX NO. 603855/2017

NYSCEF DOC. NO. 2 Case 2:17-cv-03670-SJF-ARL Document 1-1 Filed 06/16/17 Page 29 of 33 PageID #: 35 RECEIVED NYSCEF: 05/03/2017

B.      Respondent's catalogue states that the Hand and Body Lotion contains:

> wonderful rich ingredients: lots of aloe vera, wheatgerm & apricot oils, shea butter, and borage oil too. And they're all natural.

> Exhibit B, Internet webpage www.shikai.com/home/catalogue.pdf at p. 10 (August 2015).

C.      The packaging for the Moisturizing Shower Gel states that it is an "All Natural Moisturizing Shower Gel."

> Exhibit C, Internet webpage www.vitacost.com/shikai-all-natural-moisturizing-showerhand-and-body-lotion-coconut-12-fl-oz (August 2015); Exhibit D, Internet webpage www.shikai.com/home/catalogue.pdf at p. 11 (August 2015).

## Count I
## False Claim

6.      In connection with the advertising, labeling, promotion, offering for sale, or sale of its All Natural Hand and Body Lotion and All Natural Moisturizing Shower Gel, Respondent has represented, directly or indirectly, expressly or by implication, that these products are "all natural."

7.      In fact, All Natural Hand and Body Lotion and All Natural Moisturizing Shower Gel are not "all natural" because they contain or contained at least one synthetic ingredient. The All Natural Hand and Body Lotion contains or contained the synthetic ingredients Dimethicone, Ethylhexyl Glycerin, and Phenoxyethanol. The All Natural Moisturizing Shower Gel contains or contained the synthetic ingredients Ethylhexyl Glycerin and Phenoxyethanol. Therefore, the "all natural" representations set forth in Paragraph 6 are false or misleading.

## Violations of Section 5(a)

8.      The acts and practices of Respondent as alleged in this complaint constitute unfair or deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act.

**THEREFORE,** the Federal Trade Commission this _____ day of _____, 2016, has issued this Complaint against Respondent.

By the Commission.

Donald S. Clark
Secretary

SEAL:

# EXHIBIT C

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM    INDEX NO. 603855/2017
NYSCEF DOC. NO. 17    Case 2:17-cv-03670-SJF-ARL    Document 1-1    Filed 06/16/17    Page 31 of 33 PageID #: 37    RECEIVED NYSCEF: 05/03/2017

Case 7:17-cv-02494    Document 1-1    Filed 04/06/17    Page 2 of 4



| United States Department of Agriculture | 1400 Independence Avenue SW. | NOP 5033-1 |
| Agricultural Marketing Service | Room 2646-South Building | Effective Date: TBD |
| National Organic Program | Washington, DC 20250 | Page 1 of 3 |

### Draft Guidance
### Decision Tree for Classification of Materials
### as Synthetic or Nonsynthetic

Underlined terms defined on page 2



FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM INDEX NO. 603855/2017
NYSCEF DOC. NO. 12 Case 2:17-cv-03670-SJF-ARL Document 1-1 Filed 06/16/17 Page 32 of 33 PageID #: 38 05/03/2017
Case 7:17-cv-02494 Document 1-1 Filed 04/06/17 Page 3 of 4



United States Department of Agriculture    1400 Independence Avenue SW.         NOP 5033-1
Agricultural Marketing Service           Room 2646-South Building       Effective Date: TBD
National Organic Program             Washington, DC 20250                Page 2 of 3

## Definitions (bolded terms in 7 CFR 205.2)

**Agricultural inputs.** All substances or materials used in the production or handling of organic agricultural products.

**Agricultural product.** Any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock, that is marketed in the United States for human or livestock consumption.

**Allowed synthetic.** A substance that is included on the National List of synthetic substances allowed for use in organic production or handling.

*Chemical change.* A process (i.e. chemical reaction) whereby a substance is transformed into one or more other distinct substances.

*Extract.* To separate, withdraw, or obtain one or more constituents of an organism, substance, or mixture by use of solvents (dissolution), acid-base extraction, or mechanical or physical methods.

*Formulate.* To combine different materials according to a recipe or formula.

*Generic.* The common and familiar non-proprietary name.

*Manufacture.* To make a substance from raw materials.

*Natural source.* Naturally occurring mineral or biological matter.

*Naturally occurring biological process.* A process that occurs due to the action of biological organisms or subcomponents of biological organisms, such as enzymes. Examples of naturally occurring biological processes include, but are not limited to, fermentation, composting, manure production, enzymatic processes, and anaerobic digestion.

**Nonagricultural substance.** A substance that is not a product of agriculture, such as a mineral or a bacterial culture, that is used as an ingredient in an agricultural product. For the purposes of this part, a nonagricultural ingredient also includes any substance, such as gums, citric acid, or pectin, that is extracted from, isolated from, or a fraction of an agricultural product so that the identity of the agricultural product is unrecognizable in the extract, isolate, or fraction.

**Nonsynthetic (natural).** A substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. 6502(21)). For the purposes of this part, nonsynthetic is used as a synonym for natural as the term is used in the Act.

*Substance.* A generic type of material, such as an element, molecular species, or chemical compound, that possesses a distinct identity (e.g. having a separate Chemical Abstracts Service

FILED: NASSAU COUNTY CLERK 05/03/2017 05:57 PM          INDEX NO. 603855/2017

NYSCEF DOC. NO. 2    Case 2:17-cv-03670-SJF-ARL   Document 1-1   Filed 06/16/17   Page 33 of 33 PageID #: 39    RECEIVED NYSCEF: 05/03/2017

Case 7:17-cv-02494   Document 1-1   Filed 04/06/17   Page 4 of 4



United States Department of Agriculture    1400 Independence Avenue SW.          NOP 5033-1
Agricultural Marketing Service             Room 2646-South Building              Effective Date: TBD
National Organic Program                   Washington, DC 20250                  Page 3 of 3

(CAS) number, Codex International Numbering System (INS) number, or FDA or other agency standard of identity).

**Synthetic.** A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

**Table 1. Classification examples of inputs:**

| Substance | Classification | Explanation |
|---|---|---|
| Ash (burned wood) | Nonsynthetic | Substance is created by burning biological matter. |
| Calcium carbonate (limestone) | Nonsynthetic | Substance is produced from a natural source (mined mineral) and does not undergo chemical change. |
| Calcium oxide (quicklime) | Synthetic | Substance is produced from a natural source (mined mineral), but undergoes chemical change caused by heating the mineral. |
| Citric acid | Nonsynthetic | Substance is created from a naturally occurring biological process (microbial fermentation of carbohydrate substances). |
| Enzymes, without synthetic additional ingredients | Nonsynthetic | Substance is extracted from a natural source and is not formulated with synthetic ingredients |
| Gibberellic acid | Nonsynthetic | Substance is extracted from a natural source without further chemical change |
| Liquid fish products -- pH adjusted with phosphoric acid | Synthetic | Substance is derived from a natural source, but is treated with synthetic acids for pH adjustment. |
| Molasses | Nonsynthetic | Substance is derived from a natural source and chemical change is due to heating or naturally occurring biological processes. |
| Newspaper | Synthetic | Substance is manufactured via a chemical process. |
| Raw manure | Nonsynthetic | Substance is from a natural source and used without further processing. |
| Rosemary oil | Nonsynthetic | Substance is extracted from a natural source. |